## Case No. 9,034.

### MANN v. BAYLISS.

[10 O. G. 789, 113;[1] Merw. Pat. Inv. 356; 9 Chi. Leg. News, 18.]

Circuit Court, N. D. Ohio. April Term, 1876.

PATENT—CLAIM—STATE OF ART—INVENTION—DISCLAIMER.

1. The claims in a patent should be liberally construed, but must be limited by the state of the art, showing the degree of improvement effected.

2. Combining a curved metal receiver with an elevated, instead of a horizontal, delivery involves no invention, and is not patentable.

3. A disclaimer made by an attorney in the prosecution of an application does not necessarily estop the patentee from maintaining that his claim embraces the matter so referred to.

In this cause, complainant's bill recites that he is owner of letters patent of the United States, dated February 28, 1871, being a reissue and extension of letters patent No. 15,044, dated June 3, 1856, said reissued letters patent being numbered 4,281, for an improvement in harvesters, complainant having been one of the original patentees, and having acquired the interest of his co-patentee, Jacob J. Mann, by an assignment from said Jacob's administrator. The improvement consists, in brief terms, in having an elevated side delivery of the cut grain in the straw, by means of an endless apron, whereby the grain is discharged into a stationary receiver, of concave form, from whence, by means of a revolving rake, the teeth of which describe a circle nearly coincident with the circle of which the concave receiver forms a segment, the grain is gathered into gavels of suitable size for binding into sheaves or bundles, and discharged upon the ground. The bill prays answer, account of profits and damages, and injunction in the usual form. The answer denies originality and novelty of the invention, as also infringement, in that whereas by complainant's device the grain is discharged into a receiver which is "concave" in form, the machines constructed by defendant discharge their grain by a slightly-inclined chute from the elevating-apron onto a receiver which is "flat and horizontal,"

1 [10 O. G. 113 gives only a partial report.]

from which it is taken by the binder without the use of the revolving rake.

On the hearing, the question turned mainly upon the fourth claim of complainant's patent, which is in these words: The stationary concave receiver I, having a continuous surface, arranged as described at the side of a harvesting machine, having an elevated side delivery so as to receive the cut grain from the elevating and delivery apparatus, and collect the same into gavels preparatory to their being discharged from the machine.

Geo. H. Christy and Wm. Bakewell, for complainant.

S. A. Goodwin, for defendant.

Before EMMONS, Circuit Judge.

The following are the conclusions arrived at by the court in this case. The notes of the short-hand reporter were so imperfect as to render anything like a literal reproduction of the judgment impossible. This outline is sanctioned by the court as correct.

Judge EMMONS, at the close of the argument in the afternoon, announced at some length what he termed the strong inclination of his mind, but said as there was an hour or two before adjournment, and no other business would be taken up, he invited the learned counsel for the complainant to discuss the case further in reference to the objections which the court had presented to the injunction asked for. Counsel occupied the time in replying to the suggestions of the judge.

The following morning the court announced judgment substantially as follows:

His honor said that after the very full conversational interchange of opinion during the argument, it was mere matter of form to add anything now. Nothing new would be communicated. A strong sympathy was expressed with those canons of construction which so interpret a claim as to protect what a meritorious invention had created. He was just as much entitled to his right of property as a farmer to his wheat, or the fat which he put upon his animals. If the invention be trivial, and no important change be wrought in the department of labor into which the device was introduced, a less liberal construction of claims should be indulged in, and a less liberal application of the doctrine of mechanical equivalents should be extended.

The fourth claim is alone in controversy here, and its interpretation the only question necessarily to be decided. The answer insists that when properly interpreted the defendant does not infringe, and that if construed so as to include defendant's device, it is antedated by similar receivers before existing. We hold the fourth claim to include the conditions in which this curved metallic receiver could alone be used in the originally patented device. To construe it otherwise, and make it include, as plaintiff's counsel contend, every kind of barrier between the

apparatus of an elevated delivery and the binding-table upon a harvesting-machine, save a perpendicular one, would, upon principles too familiar to be argued at length, render it void. Substantially, it would include all modes, which, in the patent law, is impossible. No man of ordinary intelligence, desiring to annex a table to a harvester, would fail to insert some obstruction between the one and the other, to prevent the grain being carried by the wind into the moving machinery. It would be an equal lack of intelligence to make it perpendicular; and this prior patent of Mann's was by no means necessary to instruct him to make it oblique, and carry it so far forward upon the table as to bring the fallen grain within the reach of the binders. The defendants, in annexing their new and useful binding-table to an old and familiar device, have adopted the only possible mode of conducting the grain from one to the other. Learned counsel were repeatedly asked to conceive of any other. They were unable to state any. To construe this fourth claim so as to include what defendant has actually done, would impute to the patent law the folly of granting to one citizen the right to divorce, during fourteen years, this useful addition from the machine it was intended to improve, and where their union required no device or contrivance which an ordinary citizen, without any mechanical knowledge whatever, would not readily adopt. This consequence is demonstrative that the patent office could not have intended it. It patented the receiver with the rake and accompanying conditions. We read this fourth claim so as to include them. Thus construed, the defendant's device is conceded not to infringe it. We place some confidence in the fact that as often as learned counsel for the complainant were asked to state the leading features of this device and what distinguished it from what preceded it, they invariably pointed to the accompanying conditions which the court include in this fourth claim, and none of which are employed by this defendant. If this claim is to include only a piece of curved metal fastened to the side of the harvester so as to receive the fallen grain, then his honor thought it was antedated by several other devices given in evidence. It was answered, he said, that none of them had been found in combination with an elevated delivery. He thought, however, it would not be a good combination claim to take such a device from a horizontal delivery and combine it with an elevated one. He could not impute to the officers an intention of granting a patent for such a combination. There was no invention in taking it from one and placing it upon the other. It was the other features of the combination which secured the grant, and which incidentally could be used only with an elevated delivery. Take away these features and there was nothing like a patentable combination growing out of the union of an elevated delivery with the piece of curved metal.

The position that defendants infringed, even though the claim was construed to include a receiver with an outer edge so as to collect the grain into gavels that it may be discharged by revolving a rake, was considered at some length. Answering the arguments of complainant's counsel, among other things, Judge EMMONS said the broad level surface of the table was no mechanical equivalent for the narrow basin and turned-up outside edge of the receiver. The one collected the grain into gavels, the other did not. The one was intended to perform the particular function of arranging the grain so as to permit the action of a rake to sweep the straw in suitable parcels to the ground. The other required no such function, and could by no possibility perform it. The position was pronounced wholly untenable that the bodies of the men in the man-holes, and their arms and fingers, when in action, were the mechanical equivalents of the outer edge of the receiver and the action of the rake.

His honor said, while he did not assent to the argument of the learned counsel for the defendant that the complainant was estopped by the declaration of his pleader in the patent office, that this curvilinear receiver was old, and that, therefore, he did not claim it, still in cases of this character such a deliberate assertion was not without its influence. He felt some relief, in denying this injunction, that he was not compelled to go outside of complainant's own record for a plain declaration that he was right in the construction of this claim. He should be unwilling to have it thought the concession found in these papers constituted a very influential element in the reasons which induced his judgment. But when the whole history of this case was looked at, and it is remembered that this is a reissue seeking to claim something thought of originally only to be disclaimed, this matter may be well mentioned as a provocation to pretty close scrutiny of the extraordinary claim now insisted upon—one which declares to every citizen that he shall not insert between a novel device and an old one, to neither of which complainant has any right, a thing so simple, so utterly destitute of everything like invention, as the oblique board or common "chute" down which the grain falls upon the binding table, in the case before us.

Judge EMMONS said, in conclusion, that although he could give no reason for any doubt in this case, and the decision seemed to him plainly right, yet compelled as he was to dispose of them upon the moment, having no more time elsewhere than here to examine them, it would do the court great injustice not to suppose it recognized fully the great liability to error in such conditions. He had in this instance given, as in all similar instances he gave, to counsel the opportunity of meeting and overcoming the objections of

the court. It was a satisfaction to him to know that the complainant in this instance had been represented by counsel as experienced, learned, and able as they had been zealous, and, as he might say, enthusiastic in argument. The usual decree dismissing the bill will be entered.